GILKIN *v.* POST'S ESTATE.

EXECUTORS AND ADMINISTRATORS — CONTRACTS — CONSIDERATION — COMPROMISE AND SETTLEMENT.

Where an aunt living with her nephew and his wife gave the nephew $2,000, which he deposited in his own name, and later a controversy arose over the ownership of said money, an agreement signed by the wife, after her husband's death, to make no claim for the aunt's support for any time she might remain with her in consideration of the money in dispute being allowed to remain in her husband's estate, *held*, to bar a claim by her against the aunt's estate for support and maintenance.

Error to Gratiot; Moinet (Edward J.), J. Submitted June 8, 1923. (Docket No. 80.) Decided July 19, 1923.

Phebe Gilkin presented a claim against the estate of Eliza Post, deceased, for services rendered. The claim was disallowed in the probate court, and plaintiff appealed to the circuit court. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Mathews & Montigel,* for appellant.

*William A. Bahlke,* for appellee.

Wiest, C. J. Phebe Gilkin presented a claim against the estate of Eliza Post, deceased, amounting to $680, for support of Mrs. Post during the last 34 weeks of her life. The trial judge directed a verdict against the claim and the case is here by writ of error.

Some time before the period charged for, Eliza Post went to live at the home of her nephew, Frank Gilkin, who was the husband of claimant, and while she was there Frank Gilkin received $2,000 from her and deposited the same in two banks at Alma, taking certificates of deposit in his own name. During the lifetime of Frank Gilkin, Philip W. Creaser was appointed guardian for Mrs. Post and he paid for the care of his ward up to the time of the agreement hereinafter mentioned. Frank Gilkin died leaving all his estate, under the law, to his widow, and Philip W. Creaser was appointed administrator. During the settlement of the Frank Gilkin estate, claim was made by certain relatives of Mrs. Post, who was yet living, but under guardianship, that the $2,000 on deposit in the banks belonged to Mrs. Post and this led to the making of the following agreement:

"Whereas a controversy has existed regarding the question as to certain certificates of deposit standing in the name of Frank Gilkin, issued by the Alma State Savings Bank for $500, and another issued by

the First State Bank of Alma, Michigan, for the sum of $1,500, belonging to the estate of Frank Gilkin, deceased, or to the estate of Eliza Post, an incompetent person.

"And the several parties in interest having gotten together and come to an amicable understanding and agreement that the same shall be considered as belonging to the estate of Frank Gilkin, deceased, but on this express condition, that no claim of any kind shall be made by the estate of Frank Gilkin, deceased, nor by his widow, Phebe Gilkin, for the support, care and maintenance of the said Eliza Post, up to the time that the said Eliza Post was adjudged to be incompetent, nor for any claim of any kind for any other cause or reason, or consideration, except that the guardian of the said Eliza Post shall settle and pay Mrs. Gilkin for any amount due her for taking care of said Eliza Post since the said adjudication of incompetency, up to this time at the contract rate agreed to by the said Mrs. Gilkin and said guardian for such care and support.

"Now, therefore, I, the said Phebe Gilkin, hereby agree to the terms above stated, and expressly agree not to make any claim of any kind for the care and support so given the said Eliza Post, but the turning over of the said certificates of deposit to the estate of Frank Gilkin, deceased, is acknowledged as full and complete satisfaction for any and all claims that I, or the estate of Frank Gilkin, deceased, have against the said Eliza Post, or her estate; and it is further agreed that should the said Eliza Post at any time hereafter stop or stay at my home for a short, or long, period of time that I will not make any other or further claim for her support during the time she may so stay with me.

"And Philip W. Creaser, guardian of the said Eliza Post, and also administrator of the estate of Frank Gilkin, deceased, do hereby acknowledge full knowledge of the above named settlement by the said parties interested, and I consent to such settlement, and by virtue of my said offices, will do all in my power to carry the same out in accordance with its terms; I further agree that as guardian of the said Eliza Post that I will not arrange, bargain, or in any

way enter into an agreement with the said Phebe Gilkin, or her representatives for any further care or support of the said Eliza Post, but all such arrangements already made are hereby set aside and fully terminated.

"As a full acknowledgment of the compliance by the said Phebe Gilkin, and the said Philip W. Creaser, to the terms of the said contract above stated, they each have hereunto set their hands this 30th day of June, 1920.

"PHEBE GILKIN,   (Seal)

"PHILIP W. CREASER, (Seal)

"Guardian and Administrator."

The claim made for support of Mrs. Post commenced 8 days after this agreement and ran to the time of her death, 34 weeks later. Defendant claimed the agreement constituted a bar to the claim made and the trial judge took such view and directed verdict against plaintiff. Plaintiff insists this was error; that she was under no moral or legal obligation to care for Mrs. Post; that it was expected the guardian would take her away soon, as he agreed to do; that plaintiff's agreement: "that should the said Eliza Post stop or stay at my home for a short, or long, period of time, that I will not make any other or further claim for her support during the time she may so stay with me," "was purely and simply a contract to make a gift and was and is absolutely void for want of consideration." We cannot agree with counsel for plaintiff that there was no consideration for the agreement set up against the claim. Plaintiff knew the $2,000 deposited by her husband came from Mrs. Post, for she claimed that Mrs. Post gave the same to her husband; she knew that claim was made to the administrator of Frank Gilkin's estate, who was also guardian of Mrs. Post, for the money in behalf of Mrs. Post; she was aware that if the money remained a part of the estate of her late husband she would, under the law, take it all, and would lose it if

it was held to belong to Eliza Post, and to settle the question of ownership of the certificates and obtain the money as widow of Frank Gilkin she executed the agreement and thereby cut off all possibility of claim for any support she might thereafter give Mrs. Post.

Plaintiff claims she was under no moral or legal obligation to care for Eliza Post. A sufficient answer to this is that plaintiff was under a moral and legal obligation, if she did support Mrs. Post after the agreement, not to make any claim for doing so. Such is the agreement and the claim presented is in direct violation thereof. We are persuaded by the testimony of plaintiff that her claim is an afterthought arising out of the hope of being relieved of the binding force of her agreement. She testified:

"In the probate court when the will of Mrs. Post was under consideration * * * you (Mr. Bahlke, attorney for the estate) wanted to know of me whether I had any claim against the estate of Eliza Post. I do not remember whether you asked me whether I had one or not, but I know I said I didn't have any and I didn't at that time. It was some time after that time when I learned I had a claim against the estate of Eliza Post. Just can't tell you how long."

Plaintiff must stand by her agreement. After the making of the agreement the guardian endeavored to get Mrs. Post to leave the home of plaintiff, but was unable to prevail upon her to do so, and as she was above the age of 90 years he did not feel like removing her by force. We have given consideration to the desire of plaintiff to have the old lady leave, but have been unable to find that, by reason of her remaining there a long time rather than a short time, the agreement that should she "stop or stay at plaintiff's home for a short, or long, period of time no claim would be made for her support," means less than what it says. Plaintiff agreed not to present a claim for the support of Mrs. Post and she must abide thereby

as she was evidently content to do when she stated she had no claim. Plaintiff was right then and is wrong now.

Claimed errors in the admission and exclusion of evidence all fall by the wayside in view of this holding and it would be but labor lost to discuss them. Such claimed errors have been examined and found to present no questions affecting the result.

The judgment is affirmed, with costs to defendant estate.

FELLOWS, MCDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.